JUDGE CROTTY

BLANK ROME LLP
Attorneys for Plaintiff
OLDENDORFF CARRIERS GMBH & CO KG
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174
(212) 885-5000

**08 CIV 7020**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLDENDORFF CARRIERS GMBH & CO KG,<br><br>        Plaintiff,<br><br>-against-.<br><br>EASTERN BULKCEM CO. LTD.,<br><br>        Defendant. | 08 Civ.<br><br><u>VERIFIED COMPLAINT</u> |

Plaintiff, OLDENDORFF CARRIERS GMBH & CO KG ("Plaintiff"), by its attorneys Blank Rome, LLP, complaining of the above-named Defendant, EASTERN BULKCEM CO. LTD.("Defendant"), alleges upon information and belief as follows:

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. §1333 and federal question jurisdiction under 28 U.S.C. §1331 and 9 U.S.C. §203.

2. At all material times, Plaintiff was and now is a business entity organized and existing under the laws of Germany.

3. At all material times, Defendant was and now is a corporation or other business entity organized and existing under the laws of Nigeria with its office and place of business at Port Harcourt, Nigeria, and no office or place of business within this judicial district.

## AS A FIRST CLAIM

4. Pursuant to a charter party dated August 4, 2005 ("the Charter"), Plaintiff, as disponent owner, chartered the M/V PLANICA ("the Vessel") to Defendant, as charterer, to carry a cargo of cement in bulk from China to Nigeria.

5. In the performance of the Charter, Plaintiff earned demurrage in the sum of US$297,791.67, which Defendant has failed and refused to pay, despite due demand.

6. Pursuant to the terms of the Charter, Plaintiff's claim was submitted to Arbitration in London, and, on March 31, 2008, Plaintiff was granted an Award in the principal sum of US$297,791.67. A copy of the Award is annexed hereto as Exhibit A.

7. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration. Plaintiff was awarded interest at 7% per annum compounded quarterly to run from January 9, 2006 until the date of payment, arbitrators' fees of US$6,028 plus interest thereon at 7.5% per annum compounded quarterly from March 31, 2008, and attorney's fees. Accordingly, Plaintiff is entitled to recover the following amounts:

|   |   |   |
|---|---|---|
| A. | On the principal claim: | US$297,791.67 |
| B. | Interest: | 44,336.00 |
| C. | Arbitrator's fees: | 6,028.00 |
| D. | Attorneys' Fees: | 24,270.00 |
| **Total:** | | US$372,425.67 |

## AS A SECOND CLAIM

8.  Plaintiff repeats the allegations of paragraphs 1 - 7 as if set out fully herein.

9.  Pursuant to 9 U.S.C. § 207, it is requested that this Court confirm and enter judgment on the arbitration award in the amounts stated in paragraph 7 above.

10. Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendant is believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire credits in the hands of garnishees in this District, including but not limited to electronic fund transfers, because Defendant is engaged in international commerce using United States Dollars, of which all electronic fund transfers are processed by intermediary banks in the United States, mainly in New York City.

**WHEREFORE**, Plaintiff prays:

A.  That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.  That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendant's tangible or intangible property or any other funds held by any garnishee in the district which are due and owing or otherwise the property of to the Defendants up to the amount of **US$372,425.67** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C. That this Court retain jurisdiction over this matter through the entry of a judgment on the aforesaid arbitration award.

D. That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, NY
August 6, 2008

> Respectfully submitted,
> BLANK ROME LLP
> Attorneys for Plaintiff
>
> By _____
> Jack A. Greenbaum (JG 0039)
> 405 LexingtonAve.
> New York, NY 10174
> Tel.: (212) 885-5000

## VERIFICATION

STATE OF NEW YORK      )
                       : ss.:
COUNTY OF NEW YORK     )

Jack A. Greenbaum, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Blank Rome LLP, attorneys for the Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

_____
Jack A. Greenbaum

Sworn to before me this
6th day of August, 2008

_____
Notary Public

LESCENE GIBBONS
Notary Public, State of New York
No. 01GI6044509
Qualified in New York County
Commission Expires July 10, 20 10

BLANK ROME, LLP
Attorneys for Plaintiff
OLDENDORFF CARRIERS GMBH & CO. KG
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000
jgreenbaum@blankrome.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLDENDORFF CARRIERS GMBH & CO. KG,<br><br>                    Plaintiff,<br><br>         -against-<br><br>EASTERN BULKCEM CO. LTD.,<br><br>                    Defendant. | 08 Civ.<br><br>**AFFIDAVIT UNDER**<br>**SUPPLEMENTAL RULE B** |

STATE OF NEW YORK   )
                    )  ss:
COUNTY OF NEW YORK  )

JACK A. GREENBAUM, being duly sworn, deposes and says:

1. I am a member of the Bar of this Honorable Court and a member of the firm of Blank Rome, LLP, attorneys for the Plaintiffs herein. I am familiar with the circumstances of the complaint and submit this affidavit in support of Plaintiffs' request for the issuance of process of maritime attachment and garnishment of the property of defendant, EASTERN BULKCEM CO. LTD. ("Defendant"), a foreign corporation, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2. Defendant is a party to a maritime contract of charter party and is a foreign corporation, with no office or place of business in this Judicial District.

3. Under my supervision, my office did a search of the New York State Secretary of State, Division of Corporations, the Transportation Tickler, telephone assistance, and a general internet search.

4. In our search, we did not find any listing or reference to Defendant in this judicial district or the state of New York. In the circumstances, I believe Defendant cannot be found within this district.

JACK A. GREENBAUM

Sworn to before me this
6th day of August, 2008

Notary Public

LESCENE GIBBONS
Notary Public, State of New York
No. 01GI6044509
Qualified in New York County
Commission Expires July 10, 20 10

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION


BETWEEN:-


**OLDENDORFF CARRIERS GmbH & Co. KG**
(of Lübeck, Germany)

**Claimants**
(Disponent Owners)

- and -


**EASTERN BULKCEM CO. LTD.**
(of Port Harcourt, Nigeria)

**Respondents**
(Charterers)


**M/V "PLANICA"**


Charter Party dated Oslo, 4 August 2005


**FINAL REASONED ARBITRATION AWARD**

**Whereas:-**

1.  By a charterparty on an amended GENCON (Uniform General Charter - as revised 1922 and 1976) form with rider clauses 18 to 49 made in Oslo and dated 4 August 2005, the claimants, disponent owners, OLDENDORFF CARRIERS GmbH & Co. KG., ("the owners"), chartered to the respondents, EASTERN BULKCEM Co. Ltd., ("the charterers") the motor vessel "PLANICA" ("the vessel") for the carriage of a cargo of 40,000 metric tons of cement in bulk, 5% more or less in the owners' option, from Nantong, China to Port Harcourt, Nigeria on terms and conditions more particularly set out therein.

2.  Clause 38 of the charter party provided:

    "*DISPUTES/ARBITRATION*
    *Arbitration to be settled in London. If the amount in dispute does not exceed US$ 25,000.-, exclusive of interest of the sum claimed, cost of the Arbitration and legal expense, if any, Owners and Charterers agree that the matter should be heard under the Small Claims Procedure 1989 Terms, in accordance with L.M.A.A. Rules. English Law to apply.*"

3.  Differences, hereinafter more particularly defined, arose between the parties for the determination of which the owners appointed me the undersigned John Tsatsas of 1A Netherhall Gardens, London NW3 5RN. I accepted the appointment on 16 May 2006, initially in accordance with the current (2006) terms of the London Maritime Arbitrators Association (LMAA). The charterers did not appoint an arbitrator and pursuant to an Order of the High Court of Justice made on 13 October 2006, I was appointed to act as sole arbitrator in respect of all disputes between the claimant and the respondent arising under the charterparty dated 4 August 2005 in accordance with Section 18(3) of the Arbitration Act 1996. Pursuant to the provisions of clause 38 of the charterparty, the seat of the arbitration is in London, England.

4. The dispute referred to me concerned the owners' claim for unpaid demurrage in the amount of US$ 301,783.33 together with interest thereon and their costs.

## The procedural background

5. The owners were represented throughout by their London solicitors Messrs. MFB. The charterers were not represented, and as appears below, played no active part in the reference, although they were throughout aware of the proceedings, of the sums claimed against them and of the orders made by me in the reference.

6. The owners were in the middle of a chain of two charterparties and notified the charterers of all claims made against them by the head owners. At the same time the charterers were also informed of the points raised by the owners in their Defence Submissions and were requested to comment thereon. The charterers, however, failed to respond and/or particularise their claims against the owners.

7. Claim Submissions were served by Messrs. MFB by letter together with supporting documents[1] on 17 October 2006, in which an order from the tribunal directing the charterers to serve their Defence Submissions on or before 27 October 2006 was also sought, so that the service of the submissions in the two arbitrations referred to in paragraph 6, might be harmonised.

8. On 18 October 2006, by fax and by registered post[2], I declined the owners' application for Defence Submissions to be served by 27 October 2006 and notified the parties that the customary procedure

---

[1] Copied to the charterers and sent to Nigeria for hand delivery to Eastern Bulkcem Co. Ltd., c/o Mr. Akpebi A. Peter, Femi Aloyebi & Co., Admiralty Suite, 24 Keffi Street, Off Awolowo Road, South West Ikoyi, Lagos, 101008 Nigeria.

[2] Hard copy sent to the charterers to the above address in Nigeria by registered post for hand delivery to Eastern Bulkcem Co. Ltd.

was for the Defence Submissions to be served within 28 days of receipt of the Claim Submissions. Allowing for their delivery to Nigeria by courier, I stated that I expected service of the Defence Submissions to be accomplished by 17 November 2006.

9. Defence Submissions were not served by 17 November or at all. On 26 November 2006, I made an order on the following terms[3]:

    "*that you (the charterers) serve your Defence Submissions and Counterclaim, if any, by close of business in London on 4 December 2006. They may be served by post, courier or fax as long as they arrive on time; and they are to be sent not only to the claimant disponent owners but also to myself.*

    *As I have previously indicated, if there is non-compliance with this order, then it is probable that there will be a very short peremptory order, the sanction for non-compliance with which will be that I shall proceed to an Award on the disponent owners' submissions and documents alone. If you believe that you can object to this order then you must provide your grounds by no later than close of business tomorrow. Otherwise it stands.*"

    The transmission slip showed that order as having been successfully transmitted.

10. By fax on 5 December 2006, I made a final and peremptory order on the following terms[4]:

    "*that you (the charterers) serve your Defence Submissions and Counterclaim, if any, by close of business in London on 12 December 2006.*"

    The transmission slip showed that order as having been successfully transmitted. The charterers also acknowledged receipt by rubber stamping a copy of the order on 14 December 2006.

11. Having considered the matter, I concluded that my final and peremptory order had been effectively served on the charterers by fax [via Mr. Akpebi A. Peter, Femi Atoyebi & Co.], the transmission

---

[3] Sent to the charterers in Nigeria (also to the fax number provided by Messrs. MFB) as well as by registered post to the address previously given for hand delivery to Eastern Bulkcem Co. Ltd.

[4] Sent to the charterers in Nigeria (also to the fax number provided by Messrs. MFB) as well as by registered post to the address previously given for hand delivery to Eastern Bulkcem Co. Ltd.

slip of which recorded successful dispatch, as well as by registered post, and that accordingly the provisions of s. 76 of the Arbitration Act 1996 had been satisfied. No submissions whatsoever were received from the charterers within the deadline set (or at all), nor was there any request for further time. At no stage was there a request for an oral hearing.

12. Subsection 7 of Section 41 of the Arbitration Act 1996, provides that:

> "(7) if a party fails to comply with any other kind of peremptory order, then, without prejudice to section 42 (enforcement by court of tribunal's peremptory orders), the tribunal may do any of the following - ...
> (c) proceed to an award on the basis of such materials as have been properly provided to it..."

Accordingly, on 19 December 2006 I wrote to the parties[5] stating *inter alia* that:

> "the respondents have been given every opportunity to reply, yet have chosen not to do so. I have allowed a further week to elapse to accommodate potential seasonal delays, before declaring the proceedings closed, which I now do. Therefore, as previously advised, I shall now proceed to my Award on the disponent owners' submissions and documents alone."

The transmission slip showed that message as having been successfully transmitted.

13. Since the charterers chose not to participate in the proceedings and therefore did not serve defence submissions or bring any counterclaim against the owners, to enable me to properly calculate the time used and any demurrage earned at the discharging port, in the interests of fairness and equity, I looked to the terms of the charterparty as a whole rather than limiting myself exclusively to the clauses to which I was referred.

14. The charterparty evidencing the parties' agreement (a copy with which I was provided) was not signed by either side. Reading it

---

[5] Sent to the charterers in Nigeria (also to the fax number provided by Messrs. MFB) as well as by registered post to the address previously given for hand delivery to Eastern Bulkcem Co. Ltd.

however, in my capacity as Chartered Shipbroker, I did not detect anything unusual or irregular, particularly in the context of time counting and time used at the discharging port that might affect laytime calculations or that might be deemed controversial. Accordingly I accepted that it accurately represented what had been agreed.

### The charterparty terms

15. The charterparty provides *inter alia* as follows:

    (a) Part I/ Box 16(c): That laytime is non reversible

    (b) Part I/ Box 20 – Part II Clause 14: That a brokerage commission of 5% on the demurrage earned is due to the brokers Atlaship & Partners AS.

16. Part II (including the clauses in the rider) of the charterparty further provides *inter alia* that:

    Clause 1 & 26: *"...the vessel shall proceed to the discharging port... stated in Box 11* [Clause 26 – Port Harcourt]...*or so near thereto as she may safely get and lie always afloat and there deliver the cargo..."*

    Clause 8: *"Charterers shall also remain responsible for...demurrage incurred at port of discharge."*

    Clause 18: *"VESSEL'S DESCRIPTION To be carried on craned, grab fitted to be nominated selfdischarging vessel...The grabs to have remote control openings. Vesselto be tight, staunch and strong and fully fitted to carry the intended cargo,...."*

    Clause 20: *"NOTICES AT LOADING AND DISCHARGING ORTS Owners and/or Master to give Charterers, Shipperes/ receivers and Agents notice as follows:... At discharging port: On sailing from loading port and 15/ 10/ 8/ 5 approximate notices 3/ 2/ 1 days definite notices*
    *Following the one-day notice at discharge port, the Master shall notify Charterers/ Receivers/ Agents promptly of any change of two (2) hours or more in the estimated time of arrival.*
    *Any delay including demurrage, resulting from failure to comply, will be for Owners' account."*

    Clause 21: *"AGENTS Charterers will nominate Agents at both loading and discharge ports/ places, who will be appointed and employed by Owners...."*

7

Clause 22: "LOADING AND DISCHARGING EXPENSES Cargo...to be self discharged at the expenses of Receivers..."

Clause 25: "DISCHARGING RATE The Owners to guarantee that they will self discharge with their own cranes/ grabs and Charterers/ Receivers' Stevedores/ Crane Operators at a minimum average rate of 3200 metric tons per weather working day of 24 consecutive hours, Sundays and Holidays included.
Superholidays (Shore Labour Holidays) are always excepted, unless used when only actual time used to count."

Clause 27: "TIME TO COUNT. ...at...discharging ports, time to start counting at 14.00 hours if Notice of readiness is given during office hours before noon, and at 08.00 hours next day if Notice of Readiness is given during office hours in the afternoon, unless sooner commenced in which case actual time used to count half.
At both ends and provided the berth is free, the Notice of Readiness is to be tendered only after that the vessel has berthed and only if she is in all respects ready ...to discharge the cargo...
If the berth is occupied and provided the vessel has anchored at the waiting area of the port allocated by port authorities and she is capable to get into the port, Notice of Readiness can then be tendered by cable whether in port or not, whether in berth or not, whether customs cleared or not, whether in free pratique or not, unless these two last items are not granted on or after berthing due to vessel's fault.
Time at...discharging to stop counting upon completion of ... discharging.
Intermediate Draft Surveys ordered by Master not to count.
Time used for shifting from waiting berth or anchorage to discharging berth(s) not to count, even if vessel is already on demurrage.
Office hours:...Monday to Sunday: 08.00 hours – 17.00 hours"

Clause 30: "DEMURRAGE/ DESPATCH Demurrage rate shall be US$ 12,000.- per day/ pro rata. Half despatch shall apply on laytime saved at both ends.
Loading/ Discharging port Time Sheets, copies of Notices of Readiness duly tendered and accepted, Statements of Facts issued by vessel's Agents at loading/ discharging ports and countersigned by vessel's Master and Shippers'/ Receivers' Representatives or Agents to be presented to Charterers as soon as possible after completion of loading/ discharge."

Clause 31: "LAYTIME EXCLUSIONS
A) Ballasting/ deballasting/ trimming/ listing:
   If...discharging is suspended due to vessel's ballasting or deballasting or for reasons of trimming or listing such time not to count as laytime.
B) Vessel's disability/ breakdown:
   Any time lost due to vessel's disability/ breakdown which suspends loading/ discharging not to count as laytime.
   If ... discharging is suspended due to vessel's disability/ breakdown for more than 6 consecutive hours, Shippers/ Receivers have the right to order the vessel to free the berth immediately at Owners' time, risk and expense...Time not to count from the time disability/ breakdown occurs until such time as disability/ breakdown has been fully repaired."

Clause 32: "BILLS OF LADING Master to sign "clean on board" Bill of Lading provided cargo loaded is considered clean, failing which Master has the right to reject unclean cargo and same to be substituted by clean cargo..."

Clause 37: "RIGGING/ OPENING/ CLOSING HATCHES/ USING VESSEL'S GEAR Rigging, opening and closing of hatches...whenever required, to be for Owners' account and time shall not count as laytime, provided permitted by local regulations at ...discharge ports, failing which Charterers to employ shore hands at their expense and laytime to count..."

Clause 43: *"FORCE MAJEURE Neither party to this Contract shall be responsible for any loss or damage or delay to (sic) failure in performing hereunder resulting from...major factory breakdown...affecting the...discharge at ... receivers' facilities, or any other event whatsoever beyond the control of the party concerned which cannot be avoided, averted or guarded against."*

Clause 47: *"NON MAINTENANCE OF DISCHARGING RATE In case the vessel is not capable of maintaining the discharging rate agreed owing to the vessel's fault, time allowed for discharge to be increased proportionately.*
*Furthermore, in case the vessel is not capable of discharging at the minimum average rate agreed and, as a consequence, has been forced to quit the berth, by the local authorities, the time from leaving the berth till the vessel is again ready in all respects to resume the discharging operations will not count, even if the vessel was already on demurrage previously..."*

Clause 49: *"WINCH BREAKDOWN Notwithstanding contents of Clauses 32 and 34 [TAXES/DUES?], vessel's gear...respectively grabs to be rigged and in good working conditions and Master to have on board valid certificates and documents concerning the discharging equipment, which should be shown, if requested to the Receivers or their Agents and/ or Charterers' Servants. Any time lost due to winch breakdown and/ or grab breakdown and/ or insufficient power to be deducted pro rata to the number of gangs affected."*

## The demurrage claim

17. The vessel loaded 38,321.5 metric tons of cement in bulk at Nantong, China and carried the cargo to Port Harcourt, Nigeria where all the cargo was discharged.

18. The owners provided copies of the Captain's Notice of Readiness to discharge as well as of the Statement of Facts at the discharging port. The Notice of Readiness did not include the Receivers' or the agents' acceptance[6]. The Statement of Facts appears to have been issued by the agents, Haastrup Line, W.A., Ltd., but was not signed by them. The Captain had signed *"FOR RECEIPT ONLY AND WITHOUT ANY LIABILITY"* and had added a number of remarks at the end.

---

[6] The Captain referred to this fact in his remarks on the Statement of Facts, stating that his Notice was never returned to him.

19. The owners also presented their laytime calculations/ timesheet in support of their claim for unpaid demurrage.

20. There were certain differences between the timesheet upon which the owners based their Laytime Calculation and the Statement of Facts. This was further complicated by the fact that the charterers chose not to participate in the proceedings and therefore I was not assisted by any argument they may have had in respect of the owners' figures. Moreover, I had made it clear to the parties, throughout the reference, that I was unable to rely on evidence adduced by the head owners in the proceedings they had brought against the owners under a time charter contract, without their express permission to do so. In the event, that permission was never granted and accordingly, even though I had been appointed as sole arbitrator in that reference as well, I confined myself to the evidence put before me in the present arbitration.

21. In my deliberations, I relied on my own knowledge and expertise as a Chartered Shipbroker to do my best to arrive at a balanced decision, since the respondent charterers failed to participate in the proceedings.

22. Clause 49 of the charterparty linked the loss of time arising from faulty discharging equipment pro rata to the number of gangs affected by the breakdown rather than to the number of operational cranes available at any given moment. I would, of course, have been greatly assisted, had the charterers adduced some evidence of the number of gangs employed on a daily basis to discharge the vessel. In the event, I was left with no alternative other than to base my review of the laytime calculations selectively on both the Statement of Facts and the owners' timesheet, neither of which had been jointly agreed by the parties.

23. Clearly the cross reference in clause 49 to charterparty clauses 32 (Bills of Lading) and 34 (Taxes/ Dues) was a mistake.

24. I agreed with the owners that in accordance with Clause 27 laytime began at 14:00 hours on Friday 28 October. The time allowed for discharging was 11 days 23 hours and 25 minutes (11.9755 days).

25. Notwithstanding the inadequacies to which I have referred, and the need to interpret, rather than rely, on the documentary evidence presented, I concluded that the vessel earned demurrage on 24 days 19 hours and 35 minutes, which did not differ substantially from the owners' calculation of 25 days 3 hours and 34 minutes.

26. I accordingly found and held that the owners were entitled to an award in the amount of US$ 297,791.67 gross, together with compound interest thereon at a commercial rate from 9 January 2006 (being 30 days after completion of discharge) and their costs, in line with the usual rule that a successful party is entitled to an award of costs in its favour.

### The Award

**NOW I**, the said arbitrator, John Tsatsas, having accepted the burden of this reference and having carefully and conscientiously considered the submissions and evidence (all documentary) presented to me and having given due weight thereto, **DO HEREBY MAKE, ISSUE AND PUBLISH** this my **FINAL ARBITRATION AWARD**, as follows:

A) **I FIND AND HOLD** that the owners' claim for demurrage succeeds in the amount of US$ 297,791.67 and no more.

11

B) **I THEREFORE AWARD AND ADJUDGE** that the charterers shall forthwith pay to the owners the said sum of **US$ 297,791.67** (*two hundred ninety seven thousand seven hundred and ninety one United States Dollars and sixty seven cents*) **PLUS** interest thereon, calculated at the average rate of 7% (seven percent) per annum compounded at three-monthly rests, to run from 9 January 2006, until the date of payment by the charterers.

C) **I FURTHER AWARD AND ADJUDGE** that the charterers shall bear and pay their own and the owners' recoverable costs of the reference and I reserve to myself the right to determine the amount of the owners' recoverable costs, if not agreed, in a further Award or Awards.

D) **I FURTHER AWARD AND ADJUDGE** that the charterers shall bear the costs of this my final award, in the sum of **£ 3,063** (three thousand and sixty three Pounds Sterling), inclusive of my fees and interlocutory charges, **PROVIDED ALWAYS** that if, in the first instance the owners shall have paid any amount in respect of the costs of this Award, they shall be entitled to immediate reimbursement by the charterers of any sum or sums so paid, together with interest thereon at the rate of 7.5% (seven and one half percent) per annum or pro rata compounded at three-monthly rests, to run from the date of payment by the owners until the date of reimbursement.

E) **I FURTHER AWARD AND ADJUDGE** that the charterers shall pay the owners interest on the sum awarded in paragraph (C) at the rate of 7.5% (seven and one half per cent) per annum or pro rata, compounded at three-monthly rests, from the date hereof until the date of payment by the charterers to the owners.

F)  **I DECLARE** that this Award is **FINAL** as to the matters hereby determined and **I RESERVE JURISDICTION** to myself to make a further Award or Awards as may be appropriate in respect of any other matters arising out of or in connection with this reference which have not otherwise been finally determined herein.

**GIVEN UNDER MY HAND** in London this 31st day of March 2008

.......................................                  .......................................
John Tsatsas                                             Witness